19 F.3d 39
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
James R. SMITH, Plaintiff-Appellant,
v.
The UNITED STATES, Defendant-Appellee.
 No. 93-5151.
 United States Court of Appeals, Federal Circuit.
 Feb. 7, 1994.
Rehearing Denied March 17, 1994.
 
 Before ARCHER, PLAGER, and SCHALL, Circuit Judges.
 SCHALL, Circuit Judge.
 
 DECISION
 
 1
 James R. Smith appeals from a decision of the United States Court of Federal Claims, No. 90-3886L, granting Smith $3000 for a compensable taking of part of Cumberland Island and dismissing his complaint with respect to all other claims. Smith v. United States, 28 Fed.Cl. 430 (1993). We affirm.
 
 BACKGROUND
 
 2
 * This case concerns the alleged taking of property adjoining the Ohio River near the confluence of the Ohio and Cumberland Rivers at Smithland, Kentucky. The first tract of property ("Smithland property") is located on a bluff on the Kentucky shore overlooking the Ohio River. The other tract of property, Cumberland Island, is located in the Ohio River opposite the Smithland property and divides the Ohio River into two channels. The channel between Cumberland Island and the Kentucky shore is known as the "Kentucky Chute," and the channel between Cumberland Island and the Illinois shore is known as the "Illinois Chute." The Kentucky Chute is composed of water from the Ohio and Cumberland Rivers, whereas the Illinois Chute is composed of water from the Ohio River only.
 
 
 3
 Before 1832, the Ohio River flowed primarily through the Illinois Chute. In 1833 and 1834, the government constructed Shreve's Dike across the channel of the Ohio River from Illinois to Cumberland Island to divert the flow of water to the Kentucky Chute. After Shreve's Dike proved to be ineffective in diverting the flow of the Ohio River, it was extended and raised in elevation to increase the flow of water to the Kentucky Chute. The construction and renovation of Shreve's Dike caused some erosion on the riverbank of the Ohio River at Smithland, Kentucky. Further erosion to the Kentucky shore was caused by the combination of river traffic, current velocities, and eddies formed by the confluence of the Ohio and Cumberland Rivers.
 
 
 4
 In the early 1970's, the Army Corps of Engineers ("Corps") began construction of the Smithland Locks and Dam Project ("project"). The purposes of the project were to return the river's main navigation channel to the Illinois Chute and to replace existing structures which had failed to provide for adequate navigation. The design of the project contemplated the removal of Shreve's Dike.
 
 
 5
 On June 25, 1974, the James R. Smith Contracting Company, Inc. ("company")[1] purchased the Smithland property. A few months later, the company rip-rapped the riverbank in front of that property when Smith noticed erosion was occurring. "Rip-rapping" is a term used to describe the process of constructing a barrier to erosion on a riverbank. The process generally involves grading the riverbank, covering the riverbank with small rocks, and laying the graded rip-rap, which consists of large limestone rocks. In February 1977, the company deeded the Smithland property to Smith.
 
 
 6
 Around 1981, the project was put into service. However, contrary to the original design, Shreve's Dike was not completely removed. In addition, two dikes were constructed downstream from the dam and angled in the direction of Cumberland Island. Although the project was successful in channeling the flow of the Ohio River through the Illinois Chute, a significant amount of water continued to flow past Cumberland Island through the Kentucky Chute. As a result, the head of Cumberland Island has been significantly eroded. The riverbank in front of the Smithland property has also experienced additional erosion since the construction of the project. The company repaired the rip-rap in front of the Smithland property at a cost of approximately $78,000.
 
 II
 
 7
 On October 29, 1990, Smith filed a complaint in the United States Claims Court[2] seeking compensation for a taking of his property under the Fifth Amendment of the United States Constitution. Smith sought to recover the value of the property lost during the six years immediately preceding the filing of the complaint and the cost of preventative measures taken during that time to prevent further erosion. Smith claimed that the erosion to his Smithland property and Cumberland Island was the direct and proximate result of improvements that the government had placed in the Ohio River. More specifically, Smith contended that the erosion to his property had been caused by an increase in the flow and velocity of the water in the Kentucky Chute. According to Smith, the increased flow was caused first by the construction of Shreve's Dike and later by the construction of the project without completely removing Shreve's Dike.
 
 
 8
 Following a trial, the Court of Federal Claims held that (i) Smith had standing to bring a taking claim with respect to only .01 of acre of the Smithland property; (ii) Smith did not have standing to bring a claim for preventative measures because the court determined that the company had actually incurred the costs of the preventative measures, and there was no evidence that Smith had reimbursed the company; and (iii) Smith had failed to prove by a preponderance of the evidence that governmental action (mainly the construction of the project) was the direct and proximate cause of the erosion which had occurred on the Smithland property. Based upon the parties' stipulation that the damages arising from the erosion to Cumberland Island were proximately caused by the project and the remnants of Shreve's Dike, the court entered judgment in Smith's favor for $3000 and dismissed his complaint with respect to all other claims. This appeal followed.
 
 DISCUSSION
 
 9
 * We review a decision of the Court of Federal Claims de novo for errors of law and for clear error on findings of fact. Shelden v. United States, 7 F.3d 1022, 1026 (Fed.Cir.1993). The Supreme Court has stated that
 
 
 10
 [i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.
 
 
 11
 Anderson v. Bessemer City, 470 U.S. 564, 573-74 (1985). We have stated that "[a] factual finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Milmark Services, Inc. v. United States, 731 F.2d 855, 857 (Fed.Cir.1984) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).
 
 
 12
 As a preliminary matter, the Court of Federal Claims erred in holding that Smith did not have standing to bring a claim for preventative measures. The court's finding that the company had incurred the expenses for the preventative measures without being reimbursed by Smith is clearly erroneous. The invoices relied upon by the court in making this finding were never entered into evidence. In fact, the only evidence in the record is Smith's testimony that he had incurred the expenses. Based upon the evidence in the record, we hold that Smith established that he had standing to bring a claim for preventative measures. Thus, the remaining issue on appeal is whether the court clearly erred in holding that Smith had failed to prove by a preponderance of the evidence that governmental action was the direct and proximate cause of the erosion occurring at the Smithland property.
 
 II
 
 13
 The Fifth Amendment states that "private property [shall not] be taken for public use without just compensation." When the United States causes damage to privately owned property by making improvements on navigable waters, it is liable to the property owner for just compensation under the Fifth Amendment. Owen v. United States, 851 F.2d 1404, 1412 (Fed.Cir.1988). "If the resulting erosion which, as a practical matter, constituted part of the taking was in fact preventable by prudent measures, the cost of that prevention is a proper basis for determining the damage...." United States v. Dickinson, 331 U.S. 745, 751 (1947). However, the government is not liable under the Fifth Amendment unless there is a "proper showing that governmental action was the proximate and direct cause of the erosion damage." Loesch v. United States, 645 F.2d 905, 913 (Ct.Cl.), cert. denied, 454 U.S. 1099 (1981).
 
 
 14
 Smith contends that the erosion occurring at the head of Cumberland Island, which was caused by the government, has deprived the Smithland property of protection previously afforded by Cumberland Island. When the head of Cumberland Island was in place, the current from the Ohio River was forced into the Kentucky Chute further upstream and then turned away from the Smithland property by the Cumberland River. With the head of Cumberland Island gone, Smith argues, the current flows downstream until colliding with the Cumberland River just off his property. Smith claims that the turbulence caused by that collision has increased the erosion to the top of his riverbank.
 
 
 15
 The government contends that the Ohio River does not impinge upon the Kentucky shore; rather, it flows along the bank of Cumberland Island. The government also argues that the water of the Ohio and Cumberland Rivers is not turbulent. Thus, the government concludes, the dominant influence on the Kentucky shore is in fact the Cumberland River. In support of its position, the government relies upon pictures that graphically depict the flow of the Ohio and Cumberland Rivers and show a clear sediment coloration difference in the two rivers. The government also relies upon evidence at trial to the effect that sediment from the two rivers does not mix until the water has flowed past the Smithland property.
 
 
 16
 The government's theory is that the erosion was not caused by high current velocities, but rather by an internal erosion process known as "piping." "Piping" is a natural process whereby water in a saturated bank carries away soils needed for its support. When the upper parts of the riverbank become saturated from flood water or ground water, the water flows through the rip-rap and carries away loose soils needed to support the bank. As the process repeats itself, the bank is weakened and eventually sloughs down toward the river. The government points out that the condition of the rip-rap on the shore, the presence of substantial vegetation, and the experience that erosion generally occurs during high water support its theory that piping was the cause of the erosion.
 
 
 17
 Smith acknowledges that erosion occurring at the Smithland property may also be caused by piping. Smith contends, however, that internal erosion occurs when a bank is too steep to be stable, and as a result, the top of the bank collapses, thereby making the grade of the bank less steep and more stable. Smith argues that the reason piping occurred in this case is that the bank was too steep because governmental action--beginning with Shreve's Dike and ending with the project--caused the bottom or "toe" of the bank to recede toward the Smithland property.
 
 
 18
 First, we address Smith's contention that governmental action caused the erosion by increasing the flow and velocity of the Ohio River in the Kentucky Chute. The problem with this contention is that the government presented credible evidence that the Ohio River does not impinge upon the Kentucky shore and that the Cumberland River is the dominant influence on the Kentucky shore. Specifically, as cited in the Court of Federal Claims opinion, the expert for the government, Gordon Lance, testified that
 
 
 19
 [t]he water that flows along the riverfront in the City of Smithland is Cumberland River water. The Ohio River water that flows around the head of the island hugs the right descending bank [Cumberland Island] as it proceeds down the Kentucky chute.
 
 
 20
 Lance further testified, in connection with photographs of the Ohio and Cumberland Rivers, that
 
 
 21
 [w]hat it is really telling you from this line of demarkation between the two rivers is that the Ohio River water does not impinge upon the Kentucky shore, but rather is diverted and flows down the right or west side of the Kentucky chute.
 
 
 22
 Lance also described the water of the Ohio and Cumberland Rivers as being non-turbulent. Moreover, the fact that the Kentucky shore experienced some erosion before the construction of the project and that the City of Smithland had the Corps rip-rap part of the riverbank does not establish the fact that governmental action was the direct and proximate cause of the erosion. Lance testified that historically there has been ongoing bank erosion in the Smithland area.
 
 
 23
 Next, we address Smith's contention that governmental action caused internal erosion by moving the toe of the bank toward the Smithland property. The other expert for the government, Dr. Donald Hagerty, testified that bank erosion was caused by piping or internal erosion. Hagerty testified that if river current had undercut the soil at the bottom of the riverbank and the top of the bank had collapsed as a result, as Smith contends, there would not have been vegetation and trees growing on the riverbank. Moreover, assuming Smith's theory is correct and river current did undercut the soil at the bottom of the riverbank, Hagerty's testimony nevertheless was that currents from the Cumberland River caused the undercutting.
 
 
 24
 Both Smith and the government have presented plausible theories for the cause of the erosion occurring at the Smithland property. The Court of Federal Claims accepted the government's theory. "[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." Anderson, 470 U.S. at 575. In this action, the court regarded the testimony by Smith and his expert to be "patently weak and unimpressive," whereas the court regarded the testimony of the government's experts to be "more creditable in that it amplified the high probability of plausible alternative theories for the identified erosion." Thus, the court concluded, Smith had failed to prove that governmental action was more probable than not the direct and proximate cause of the erosion. Based upon our standard of review, we cannot say that the court erred in holding that Smith had failed to prove by a preponderance of the evidence that governmental action was the direct and proximate cause of the erosion at the Smithland property. Accordingly, we affirm.
 
 
 
 [1]
 The company is a closely-held corporation, in which Smith owns 92% of the stock and his sons own the other 8%
 
 
 [2]
 The Federal Courts Administration Act of 1992, Pub.L. No. 102-572, Sec. 902(a), 106 Stat. 4506, 4516, changed the name of the United States Claims Court to the "United States Court of Federal Claims."